UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WM BANG LLC AND JBANG LLC D/B/A
BANG, on behalf of themselves and all others
similarly situated,

                        Plaintiffs,

    -v-

TRAVELERS CASUALTY INSURANCE
COMPANY OF AMERICA,

                      Defendant.

No. 20-CV-4540 (KMK)

OPINION & ORDER

---

Appearances:

Greg F. Coleman, Esq.
Alex R. Straus, Esq.
Milberg Coleman Bryson Phillips Grossman, PLLC
Knoxville, TN
Beverly Hills, CA
*Counsel for Plaintiffs*

Shannon J. Carson, Esq.
Berger Montague PC
Philadelphia, PA
*Counsel for Plaintiffs*

Wystan M. Ackerman, Esq.
Robinson & Cole LLP
Hartford, CT
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

       WM Bang LLC and JBang LLC D/B/A Bang (collectively, "Plaintiffs") bring this Action

on behalf of themselves and all others similarly situated, against Travelers Casualty Insurance

Company of America ("Defendant") for breach of contract claims and declaratory judgment

under the Business Income and Civil Authority provisions of an insurance policy issued by

Defendant for losses related to the COVID-19 pandemic and government orders issued in connection with it.  Before the Court is Defendant's Motion to Dismiss (the "Motion," Dkt. No. 34).  For the reasons that follow, the Motion is granted.

## I.  Background

### A. Factual Background

The following facts are taken from Plaintiffs' Amended Complaint, (Am. Compl. (Dkt. No. 21)), and the accompanying documents attached to it, and are assumed true for purposes of deciding the Motion.

Plaintiffs own and operate a restaurant named Bang in a shopping mall in White Plains, New York (the "Restaurant"), which "was forced to significantly curtail its services due to Orders issued by the State of New York" (the "Orders") "in connection with the COVID-19 pandemic . . . ."  (Am. Compl. ¶ 1.)  Plaintiffs purchased an "all risk" Businessowners Property Coverage policy from Defendant (the "Policy").  (Def.'s Ex. A (the "Policy") (Dkt. No. 35-1.))[1] Among other coverages, the Policy specifically includes coverage for Business Income for twelve (12) months of actual loss sustained and coverage for action of Civil Authority for three weeks.  (Am. Compl. ¶ 3.)  The Policy dictates that Defendant will pay "for direct physical loss of or damage to [the Restaurant] . . . caused by or resulting from a Covered Cause of Loss." (Policy at 20–21.)  A Covered Cause of Loss is defined as "RISKS OF DIRECT PHYSICAL LOSS," except those that are expressly listed in the Limitations or Exclusions sections of the Policy.  (Policy at 21–22.)  As part of the coverage, Defendant agreed to pay for Plaintiffs' actual loss of Business Income due to the suspension of Plaintiffs' operations caused by direct physical

---

[1] The Court cites to the page numbers stamped on the bottom right hand corner of this copy of the Policy, entitled "TRAVELERS DOC MGMT" for ease of reference.

loss of or damage to the Restaurant.  (Am. Compl. ¶ 15.)  The Policy also includes Civil

Authority coverage, under which Defendant agreed to pay for the actual loss of Business Income

sustained when access to the insured premises is prohibited by actions of a civil authority "due to

direct physical loss of or damage to property at locations, other than described premises, that are

within 100 miles of the described premises, caused by or resulting from a Covered Cause of

Loss."  (Policy at 33.)

During the COVID-19 pandemic, the Orders issued by Governor Andrew M. Cuomo

"prohibited Plaintiff[s'] business from being open and prohibited access to [the Restaurant.]"

(Am. Compl. ¶¶ 22–25.)  The Orders intended "to slow down the deadly and dangerous spread of

the COVID-19 [virus]."  (*Id.* ¶ 22.)  For example, Governor Cuomo's March 7, 2020 order was

issued because "travel-related cases and community transmission of COVID-19 have been

documented in New York State and more [were] expected to continue."  (*Id.* ¶ 24(a)).  Plaintiffs

were "forced to significantly curtail [their] services," and while "take-out or delivery for off-

premise consumption" was permitted, for some period of time the Orders "prohibited [the

Restaurant] from being open and prohibited access to [it]."  (*Id.* ¶¶ 1, 24(c), 25.)  Plaintiffs "have

suffered direct physical loss of Business Income due to the necessary suspension of operations."

(*Id.* ¶ 26.)  The COVID-19 pandemic and the related Orders denied Plaintiffs access to the

Restaurant.  (*Id.* ¶ 29.)

Having suffered a loss of property and a suspension of operations, Plaintiffs submitted a

claim to Defendant pursuant to the Policy's Business Income and Civil Authority coverage

provisions, but Defendant denied Plaintiffs' claim.  (*Id.* ¶ 30.)  Defendant explained that "[t]he

presence or possible presence of the COVID-19 virus [did] not constitute 'direct physical loss of

or damage to property,'" thus, "the limitations on [Plaintiffs'] business operations were the result

of the [Orders] as opposed to 'direct physical loss or damage to property at the described premises.'" (*Id.* ¶ 30(a).)  The denial further explained that "Covered Causes of Loss are 'RISKS OF DIRECT PHYSICAL LOSS' that are not otherwise limited or excluded, [and the Policy includes] an exclusion for 'loss or damage caused by or resulting from any virus'—such as the COVID-19 virus—'that induces or is capable of inducing physical distress, illness or disease.'" (*Id.* ¶ 30(b).)

    B. Procedural History

Plaintiffs filed the Complaint on June 12, 2020.  (Dkt. No. 1.)  On June 16, 2020, Plaintiffs filed a letter to request leave to file a corrected complaint to revise the second Plaintiff's name, which the Court granted.  (Dkt. Nos. 5–6.)  On June 18, 2020, Plaintiffs filed the corrected complaint.  (Dkt. No 7.)  On July 22, 2020, Defendant filed a letter regarding its anticipated motion to dismiss.  (Dkt. No. 15.)  In response, Plaintiffs requested the opportunity to amend the complaint, which the Court granted.  (Dkt. Nos. 19–20.)  On September 3, 2020, Plaintiffs filed the Amended Complaint.  (Dkt. No. 21.)  On November 24, 2020, the Court held a pre-motion conference and adopted a briefing schedule for Defendant's motion to dismiss. (*See* Dkt. (minute entry for Nov. 24, 2020).)  On December 15, 2020, Defendant filed the Motion and accompanying papers.  (Def.'s Not. of Mot. (Dkt. No. 34); Def.'s Mem. of Law in Supp. of Mot. To Dismiss. ("Def.'s Mem.") (Dkt. No. 35).)  On January 5, 2021, Plaintiffs filed their Opposition.  (Pls.' Opp. to Def.'s Mot. To Dismiss ("Pls.' Mem.") (Dkt. No. 36).)  On January 19, 2021, Defendant filed its Reply.  (Def.'s Reply Mem. of Law in Supp. of Mot. To Dismiss ("Def.'s. Reply") (Dkt. No. 37).)

Since filing the Motion and the supporting papers, the Parties have submitted numerous letters alerting the Court to new authority addressing the legal questions in this case.  (*See* Dkt. Nos. 38–39, 41.)

## II.  Discussion

### A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (alteration and quotation marks omitted).  Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

is entitled to relief.'" (citation omitted) (alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)));

*id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-

pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed

with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and

"draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992

F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145

(2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must

confine its consideration to facts stated on the face of the complaint, in documents appended to

the complaint or incorporated in the complaint by reference, and to matters of which judicial

notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y.

2016) (same).

### B. Analysis

#### 1. Business Income Coverage

"Under New York law, insurance policies are interpreted according to general rules of

contract interpretation." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 98 (2d Cir. 2012)

(footnote omitted). "[T]he initial interpretation of a contract 'is a matter of law for the court to

decide.'" *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)

(quoting *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996)). "[A]n

insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear

language of the contract." *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*,

472 F.3d 33, 42 (2d Cir. 2006).  The "words and phrases [in a contract] should be given their

plain meaning, and the contract should be construed so as to give full meaning and effect to all of

its provisions."  *LaSalle Bank Nat'l Ass'n v. Nomura Asset Cap. Corp.*, 424 F.3d 195, 206 (2d

Cir. 2005) (alteration and quotation marks omitted).  "Insurance policies must be construed in a

way that affords a fair meaning to all of the language employed by the parties in the contract and

leaves no provision without force and effect."  *Selective Ins. Co. of Am. v. County of Rensselaer*,

47 N.E.3d 458, 461 (N.Y. 2016) (alterations and quotation marks omitted).  "When resolving

disputes concerning the scope of coverage, [courts] look to the specific language in the relevant

insurance policies."  *Chen v. Ins. Co. of the State of Pa.*, 163 N.E.3d 447, 449–50 (N.Y. 2020).

Under New York law, "a policyholder bears the burden of showing that the insurance contract

covers the loss."  *Morgan Stanley Grp. Inc. v. New Eng. Ins. Co.*, 225 F.3d 270, 276 (2d Cir.

2000) (collecting cases).

     To determine the scope of the Policy's Business Income coverage, the Court begins with

the text of the relevant provision.  The Policy states:

> [Defendant] will pay for the actual loss of Business Income you sustain due to the
> necessary "suspension" of your "operations" during the "period of restoration".  The
> "suspension" must be caused by direct physical loss of or damage to property at the
> [Restaurant].  The loss or damage must be caused by or result from a Covered Cause
> of Loss.

(Policy at 20–21.)  The Covered Causes of Loss are defined and explained in the Policy subject

to various Limitations and Exclusions.  (Policy at 22, 40–44.)  Plaintiffs have not alleged any

"direct physical loss of or damage to property" whatsoever to the Restaurant.  (*See generally*

Am. Compl.)  Plaintiffs state in a conclusory fashion that the "loss of the insured property caused

by the COVID-19 pandemic" constitutes "direct physical loss of *or* damage to property"—but

this is insufficient as a matter of law to support coverage under the Policy.  (*Id.* ¶¶ 28, 64.)  For

example, Plaintiffs do not allege any *physical* loss or damage to the Restaurant through fire or

theft, but instead impermissibly assert that the "loss of access to Plaintiffs' property" somehow

entitles them to coverage under the Policy.  (Pls.' Mem. at 7, 12–20.)  This argument, however,

runs straight into the plain text of the Policy and the overwhelming authority that holds

otherwise.  Indeed, courts in this district—particularly in deciding disputes arising from the

COVID-19 pandemic—have repeatedly found that direct physical loss of or damage to property

"unambiguously[] requires some form of *actual, physical damage* to the insured premises."

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331

(S.D.N.Y. 2014) (emphasis added); *see also Broadway 104, LLC v. XL Ins. Am., Inc.*, No. 20-

CV-3813, 2021 WL 2581240, at *4 (S.D.N.Y. June 23, 2021) (finding that because the plaintiff

had not alleged a "direct physical loss," it had not plausibly stated a covered loss under the

policy); *Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, No. 20-CV-4736, 2021 WL

2403088, at *7 (S.D.N.Y. June 11, 2021) (noting the "extensive case law that has developed in

New York on this exact issue over the past year, which provides that loss of use caused by the

COVID-19 pandemic is not physical damage"); *Deer Mountain Inn LLC v. Union Ins. Co.*, No.

20-CV-984, 2021 WL 2076218, at *8 (N.D.N.Y. May 24, 2021) ("The [p]olicy's Business

Income . . . [p]rovisions use the precise language that courts applying New York law have

consistently held unambiguously does not cover mere 'loss of use' that is unconnected to any

physical damage, alteration or compromise to the insured property."); *Rye Ridge Corp. v.

Cincinnati Ins. Co.*, No. 20-CV-7132, 2021 WL 1600475, at *2 (S.D.N.Y. Apr. 23, 2021) ("The

[c]omplaint alleges that COVID-19 caused a 'direct physical loss' of [the] [p]laintiffs' business

premises, thus triggering the [p]olicies' Business Income coverage.  The [c]omplaint fails to state

a claim because, despite this conclusory allegation, the [c]omplaint pleads no facts to suggest

that there was a 'physical loss or accidental physical damage' to the insured property as the [p]olicies require."); *Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co., Ltd.*, No. 20-CV-3350, 2021 WL 1034259, at *6 (S.D.N.Y. Mar. 18, 2021) ("Under New York law, it is unambiguous that (1) 'loss of' property does not encompass 'loss of use' of that property; and (2) insurance provisions that cover business interruption 'caused by direct physical loss of or physical damage to property' provide coverage only where the insured's property suffers direct physical damage." (quotation marks omitted)) (report and recommendation); *Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, No. 20-CV-3418, 2021 WL 860345, at *4 (S.D.N.Y. Mar. 6, 2021) ("[T]he great majority of courts that have addressed this issue of insurance coverage for business losses sustained as a result of COVID-19 restrictions have held that a complaint which only alleges loss of use of the insured property fails to satisfy the requirement for physical damage or loss."); *DeMoura v. Cont'l Cas. Co.*, No. 20-CV-2912, 2021 WL 848840, at *5 (E.D.N.Y. Mar. 5, 2021) ("New York courts have consistently understood identically worded insurance clauses to exclude business interruption losses from coverage when the losses were not caused by real, tangible damage to or loss of the property."); *Michael Cetta, Inc. v. Admiral Indem. Co.*, 506 F. Supp. 3d 168, 175–82 (S.D.N.Y. 2020) (dismissing breach of contract claims for business income coverage because the plaintiff failed to allege that the property was physically lost or damaged but instead centered his claims around the inability to fully use his restaurant which was insufficient as a matter of law), *appeal withdrawn*, No. 21-57, 2021 WL 1408305 (2d Cir. Mar. 23, 2021); *Phila. Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 288 (S.D.N.Y. 2005) (explaining that "physical loss or damage" requires that "the interruption in business must be caused by some *physical problem* with the covered property" (emphasis added)).  The Amended

9

Complaint is completely devoid of any claim of *physical* loss or damage and only alleges loss of use, which cannot support a breach of contract claim.

Plaintiffs also argue that the Orders by Governor Cuomo resulted in direct physical loss or damage to the Restaurant.  But this argument is unavailing and has been consistently rejected by courts in this District.  As Judge John P. Cronan explained in *Michael Cetta*, "nearly every court to address this issue has concluded that loss of use of a premises due to a governmental closure order does not trigger business income coverage premised on physical loss to property." 506 F. Supp. 3d at 179 (collecting cases).  The facts of *Michael Cetta* are analogous to those here.  In *Michael Cetta*, the plaintiff—a restaurant in midtown Manhattan—claimed it had sustained "direct physical loss" of its property because it was unable to fully use the restaurant due to government orders concerning the COVID-19 pandemic.  *Id.* at 170, 175.  Relying on New York precedent, Judge Cronan concluded that "[t]he plain meaning of the phrase 'direct physical loss of or damage to' . . . connotes a negative alteration in the tangible condition of property."  *Id.* at 176.  In evaluating the plaintiff's claim of direct physical loss of or damage to property, the Court held that "[l]osing the ability to use otherwise unaltered or existing property simply does not change the physical condition or presence of that property and therefore cannot be classified as a form of 'direct physical loss' or 'damage.'"  *Id.*  The court ultimately concluded that because none of the facts pleaded suggested that the restaurant's suspension of operations was "caused by direct physical loss of or damage to property" that there was no breach of contract.  *Id.* at 182.

*Roundabout Theatre Company v. Continental Casualty Company*, relied on in *Michael Cetta*, is also instructive.  751 N.Y.S.2d 4 (App. Div. 2002).  In *Roundabout Theatre*, there was a major construction accident on the same street on which a theater staging a popular musical was

located.  *Id.* at 5.  Because of the construction accident, the City of New York closed the street

entirely.  *Id.*  While the theatre itself suffered only minimal physical damage that was repaired

within one day, it was forced to cancel dozens of performances because the street was

inaccessible to the public.  *Id.*  The theater claimed business interruption loses and the insurer

denied coverage.  *Id.* at 5–6.  As a result, the theater sued the insurer.  *Id.* at 6.  The policy at

issue provided coverage for "loss of, damage to, or destruction of property or facilities . . .

contracted by the insured for use in connection with such [p]roduction, caused by the perils

insured against," and defined "perils insured" as "all risks of direct physical loss or damage to

the [theater's] property."  *Id.* at 8.  The Appellate Division ultimately concluded that the policy

"clearly and unambiguously provide[d] coverage only where the insured's property suffers direct

physical damage" and thus "the only conclusion that can be drawn is that the business

interruption coverage is limited to losses involving *physical damage to the insured's property.*"

*Id.* (emphasis added).  The Appellate Division squarely rejected the theater's argument that "loss

of" must include "loss of use of" the insured premises and as such concluded that the theater was

not entitled to coverage.  *Id.* at 8, 10.

Similarly, a court in this District applied the reasoning of *Roundabout Theatre* to reject

another claim arguing that "loss of use" constitutes "direct physical loss or damage."  *Newman

Myers*, 17 F. Supp. 3d at 328–33.  In *Newman Myers*, a law firm lost power for several days

during and as a result of Hurricane Sandy.  *Id.* at 324–26.  The law firm sued its insurer after it

was denied business income coverage.  *Id.* at 326.  The court's reasoning turned on "whether the

insured premises experienced 'direct physical loss or damage'" because the firm's employees

could not access the office.  *Id.* at 328.  The court explained that "[t]he words 'direct' and

'physical,' which modify the phrase 'loss or damage,' ordinarily connote actual, demonstrable

harm of some form to the premises itself, rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure." *Id.* at 331.  The court further noted it was unaware of any authority supporting the notion that "direct physical loss or damage" should be read to include "mere loss of use of a premises." *Id.*  This line of cases support the Court's conclusion here that because Plaintiffs have failed to establish any physical loss or damage to the Restaurant, they are not entitled to Business Income coverage under the Policy.

Further, the Policy also includes an explicit exclusion that bars coverage for "loss or damage caused by or resulting from any . . .  loss of use." (Policy at 42.)  This type of exclusion has been cited as an additional basis to dismiss COVID-19 related insurance cases. *Accord LDWB #2 LLC v. FCCI Ins. Co.*, No. 20-CV-425, 2021 WL 2744568, at *4 (W.D. Tex. July 1, 2021) ("[T]he [p]olicy contains a 'loss of use' exclusion providing, in relevant part: '[the defendant] will not pay for loss or damage caused by or resulting from any of the following: . . . [d]elay, loss of use or loss of market.' . . . This separate provision for loss of use suggests that the 'direct physical loss of or damage to property' clause 'was not intended to encompass a loss where the property was rendered unusable without an intervening physical force.'" (quoting, inter alia, *Ballas Nails & Spa, LLC v. Travelers Cas. Ins. Co. of Am.*, No. 20-CV-1155, 2021 WL 37984, at *4 (E.D. Mo. Jan. 5, 2021))), *report and recommendation adopted*, 2021 WL 3486122 (W.D. Tex. July 26, 2021); *Monday Rests. LLC v. Intrepid Ins. Co.*, No. 20-CV-1015, 2021 WL 2222692, at *4 (E.D. Mo. June 2, 2021) ("'[D]irect physical loss of property' . . . requires plaintiffs to allege some *physical* element impacting their property, not just loss of intended use without any physical impact on the property. . . . Other terms in the policies, including the 'loss of use' exclusion . . . support this conclusion."); *Paul Glat MD, P.C.*

12

*v. Nationwide Mut. Ins. Co.*, No. 20-CV-5271, 2021 WL 1210000, at *5 n.25 (E.D. Pa. Mar. 31, 2021) ("The policy contains a specific exclusion for 'loss of use,' . . . [t]his exclusion underscores our conclusion that the policy contemplates only physical damage."); *Whiskey River on Vintage, Inc. v. Ill. Cas. Co.*, 503 F. Supp. 3d 884, 890, 907 (S.D. Iowa 2020) (finding that a provision in the policy disclaiming liability for "[d]elay, loss of use or loss of market" "unambiguously states that [the] [d]efendant will not pay for loss or damage resulting from a loss of use"); *Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 487 F. Supp. 3d 834, 843 (N.D. Cal. 2020) ("The separate provision for loss of use suggests that the 'direct physical loss of . . . property' clause was not intended to encompass a loss where the property was rendered unusable without an intervening physical force.").  Thus, the Court could also dismiss Plaintiffs' breach of contract claim on this ground alone.

Because Plaintiffs have failed to plausibly allege any physical loss or damage to the Restaurant, the claim for breach of contract under the Business Income provision is dismissed.[2]

### 2. Civil Authority Coverage

The Court next turns to Plaintiffs' argument that they are entitled to coverage under the Policy's Civil Authority provision.  (Pls.' Mem. at 20.)  The Policy's Civil Authority coverage insures the actual loss of Business Income where the following three conditions are satisfied: (1) "action of civil authority . . . prohibits access to the described premises"; (2) the action of

---

[2] "[T]he law is clear that a request for a declaratory judgment must be dismissed if it is merely duplicative of [a] [p]laintiff's breach of contract claim."  *NRW, Inc. v. Bindra*, No. 12-CV-8555, 2015 WL 3763852, at *3 (S.D.N.Y. June 16, 2015); *see also Optanix, Inc. v. Alorica Inc.*, No. 20-CV-9660, 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021) ("Courts reject declaratory judgment claims 'when other claims in the suit will resolve the same issues,' because, under such circumstances, a declaratory judgment will not serve any useful purpose." (citation omitted)).  Accordingly, because Plaintiffs' claim for declaratory judgment seeks a declaration of the same rights as determined under the breach of contract claim, it is deemed duplicative and also dismissed.

civil authority "must be due to direct physical loss of or damage to property at locations, other than described premises, that are within 100 miles of the described premises"; and (3) the "direct physical loss of or damage to property" must be "caused by or resulting from a Covered Cause of Loss." (Policy at 33.) For starters, the Amended Complaint fails to allege any specific damage to property near the Restaurant. Instead, Plaintiffs argue that the Orders "were connected to the ubiquitous presence of COVID-19, which . . . causes physical loss of or damage to property." (Pls.' Mem. at 20.) But the Court has already considered and rejected this argument. Plaintiffs also have not demonstrated that the civil authority action is "due to direct physical loss of or damage to property at locations, other than described premises, that are within 100 miles of the described premises, caused by or resulting from a Covered Cause of Loss." (Policy at 33.) By failing to plead that neighboring properties suffered any physical loss, Plaintiffs have not met their burden to show they are entitled to Civil Authority Coverage under the Policy. This is consistent with the other decisions in this District regarding this same issue. *See, e.g., Kim-Chee LLC v. Pa. Indem. Ins. Co.*, No. 20-CV-1136, 2021 WL 1600831, at \*7 (W.D.N.Y. Apr. 23, 2021) ("Plaintiffs cannot satisfy the requirements for [Civil Authority] coverage. Devastating as the closure has been to [the] [p]laintiffs and thousands of other businesses, [the] [p]laintiffs cannot provide specific, non-general allegations that document a direct physical injury to property (not theirs) that gave rise to the civil authority orders. They do not allege that the executive orders were triggered by 'direct physical loss or damage to other property.' They allege something less: 'The [civil authority] [o]rders prohibited access to the covered properties as a result of the damage and the ongoing and continuous loss and damage resulting from the [COVID-19] [v]irus.'"); *Food for Thought*, 2021 WL 860345, at \*6 (holding that to be entitled to civil authority coverage the order "would need to be a direct result of a Covered Cause of Loss to

property in the immediate area of [the insured] premises" and ruling that the plaintiff "has failed to trigger coverage under the [p]olicy's Civil Authority provision," including because "the [a]mended [c]omplaint fails to allege that the civil authority orders prohibiting access to the plaintiff's property were caused by risks of direct physical loss to property in the surrounding area" (quotation marks omitted)); *Michael Cetta*, 506 F. Supp. 3d at 183 (denying civil authority coverage where the plaintiff failed to allege any specific damage to any neighboring properties).

In fact, materially similar cases that New York courts have analyzed over the last year and a half uniformly hold that the executive orders issued by Governor Cuomo in response to the COVID-19 pandemic were not on account of any physical loss or damage to any specific property.  *See, e.g., Sharde Harvey*, 2021 WL 1034259, at *9, *14 (finding that the "[executive] orders were the result of the COVID-19 pandemic and . . . do not constitute a 'direct physical loss' to property"); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 507 F. Supp. 3d 482, 488 (S.D.N.Y. 2020) (concluding that "[the] [p]laintiff was forced to close for the same reason as its neighbors—the risk of harm to individuals on its own premises due to the pandemic.  Put differently, the [c]omplaint does not plausibly allege that the potential presence of COVID-19 in neighboring properties directly resulted in the closure of [the] [p]laintiff's properties"); *see also Visconti Bus Serv., LLC v. Utica Nat'l Ins. Grp.*, 142 N.Y.S.3d 903, 917 (Sup. Ct. 2021) ("[T]he gist of Civil Authority coverage is that physical harm to someone else's premises has caused the civil authorities to prohibit access to the insured's premises.  Here, in contrast, *both* premises are restricted for the same reason: to limit the risk of spreading the [COVID]-19 virus.  This simply does not implicate Civil Authority coverage.").  *Michael Cetta* is particularly helpful on this point, explaining that "[w]ithout specific allegations that a neighboring property suffered 'damage to property,' the Complaint fails to state a claim that is plausible on its face as to [the

plaintiff's] entitlement to civil authority coverage." 506 F. Supp. 3d at 183; *accord Pappy's Barber Shops, Inc. v. Farmers Grp., Inc.*, 491 F. Supp. 3d 738, 740 (S.D. Cal. 2020) (concluding that the civil authority orders were "precautionary measures taken by the state to prevent the spread of COVID-19" and were "not issued as a result of loss or damage to property" and therefore the plaintiff was not entitled to coverage under the policy); *Mudpie*, 487 F. Supp. 3d at 844 (dismissing breach of contract claim for civil authority coverage because "government closure orders were intended to prevent the spread of COVID-19" and orders were "preventative," thus the plaintiff failed to "establish the requisite causal link between prior property damage and the government's closure order"). The case law in this District and nationwide is clear: Civil Authority coverage is triggered by actions of civil authority taken in response to direct physical loss of or damage to nearby property. Plaintiffs allege that the Orders were issued due to the "spread of COVID-19" and "to slow down the deadly and dangerous spread of the COVID-19 pandemic," but such allegations are plainly insufficient to warrant coverage under the Policy. (Am. Compl. ¶ 22.); *see Sharde Harvey*, 2021 WL 1034259, at *9 ("COVID-19 damages lungs, not property."). The Amended Complaint is completely lacking of any reference to any building other than the Restaurant and it does not discuss any direct physical loss of or damage to non-insured property.

Even prior to the COVID-19 pandemic, courts have repeatedly held that property insurance policies with comparable civil authority provisions did not cover losses caused by the loss of use of a property that had not been physically lost or damaged. *See Phila. Parking Auth*, 385 F. Supp. 2d at 282, 289–90 (dismissing breach of contract claim for civil authority coverage because access to the plaintiff's property was not prohibited and thus there was no entitlement to coverage under the policy); *Abner, Herrman & Brock, Inc. v. Great N. Ins. Co.*, 308 F. Supp. 2d

331, 333 (S.D.N.Y. 2004) (finding that civil authority coverage did not apply to subject property when "pedestrian access was permitted, and public transit was available" even though "vehicular traffic was restricted").

The Amended Complaint fails to plead that the area surrounding the Restaurant suffered damage or that a civil authority order completely barred access to it and the area immediately surrounding any neighboring damaged area.  As such, Plaintiffs' breach of contract claims for Civil Authority coverage are dismissed.[3]

### 3. The Policy's Virus Exclusion

Lastly, the Policy's Virus Exclusion precludes coverage.  The Policy contains an endorsement entitled "NEW YORK - EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA," which states:

> We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Policy at 176.)  This exclusion expressly "applies to all coverage under all forms and endorsements that comprise this Coverage Part, including but not limited to . . . forms or endorsements that cover business income, extra expense . . . or action of civil authority."  *Id.* Plaintiffs allege, for example, that the Restaurant "was forced to significantly curtail its services due to Orders issued by the State of New York in connection with the COVID-19 pandemic[.]" (Am. Compl. ¶ 1.)  Plaintiffs also allege "[t]he suspension of . . . operations was caused by 'direct physical loss of *or* damage to' property in the form of a loss of the insured property

---

[3] As discussed in note 1, because the Court dismisses Plaintiffs' breach of contract claim for Civil Authority coverage, their request for declaratory judgment under this provision is denied.  *See, e.g.*, *Com. Lubricants, LLC v. Safety-Kleen Sys., Inc.*, No. 14-CV-7483, 2017 WL 3432073, at *17 (E.D.N.Y. Aug. 8, 2017) (collecting cases).

caused by the COVID-19 pandemic, and the . . . Orders." (*Id.* ¶ 28.) The Amended Complaint highlights that the Orders were issued in light of the "COVID-19 pandemic." (*Id.* ¶¶ 29, 74.) The Amended Complaint repeatedly refers to the "COVID-19 pandemic" and notes that the Orders were issued in response and resulted in a "direct physical loss," to the coverage sought. (*Id.* ¶¶ 64–65, 68, 85–87.) A virus like COVID-19 is not a Covered Cause of Loss under the Policy and as such cannot give rise to coverage under the Business Income or Civil Authority provisions. Courts across the country have held that similar virus exclusions preclude coverage for property insurance claims arising from the COVID-19 pandemic. *See Cali Fresh, LLC v. Twin City Fire Ins. Co.*, No. 20-CV-522, 2021 WL 3620074, at *8 (M.D.N.C. Aug. 16, 2021) (finding that the virus exclusion bars plaintiff's breach of contract claim where it "expressly states that viruses are not a covered cause of loss" ); *Downs Ford, Inc. v. Zurich Am. Ins. Co.*, No. 20-CV-08595, 2021 WL 1138141, at *4–6 (D.N.J. Mar. 25, 2021) (finding that because the executive orders were issued as a direct result of COVID-19 that the cause of loss fell squarely within the policy's virus exclusion and thus could not trigger civil authority coverage); *AFM Mattress Co. v. Motorists Com. Mut. Ins. Co.*, 503 F. Supp. 3d 602, 607 (N.D. Ill. 2020) (granting motion to dismiss because under the policy, "damage from a virus was not a covered cause of loss" and it "explicitly excluded coverage for virus-related loss"). In fact, at least six courts, including one in this District, have granted motions to dismiss filed by Defendant or its affiliates that involve the exact same Virus Exclusion. *See 100 Orchard St., LLC v. Travelers Indem. Ins. Co. of Am.*, No. 20-CV-8452, 2021 WL 2333244, at *2 (S.D.N.Y. June 8, 2021) ("[T]he Policy contains a Virus Exclusion Clause that independently and unambiguously bars coverage of [the plaintiff's] business losses at issue. . . . It follows that [the plaintiff's] business losses were plainly 'caused by,' or at least 'result[ed] from,' a 'virus' that 'is capable of inducing

physical distress, illness or disease,' . . . and are unambiguously excluded from coverage under the [p]olicy."); *Toppers Salon & Health Spa, Inc. v. Travelers Prop. Cas. Co. of Am.*, 503 F. Supp. 3d 251, 255–56 (E.D. Pa. 2020) (finding that the Virus Exclusion applies and thus forecloses coverage under the policy); *Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Conn.*, 492 F. Supp. 3d 1051, 1057 (C.D. Cal. 2020) (granting motion to dismiss finding that the Virus Exclusion "applies here and precludes all coverage" where the restaurant alleged business income losses based on governmental restrictions on restaurant operations during the COVID-19 pandemic); *see also Natty Greene's Brewing Co. v. Travelers Cas. Ins. Co. of Am.*, 503 F. Supp. 3d 359, 363–64 (M.D.N.C. 2020) (granting motion to dismiss based on the same Virus Exclusion); *Real Hosp. LLC v. Travelers Cas. Ins. Co. of Am.*, 499 F. Supp. 3d 288, 297 (S.D. Miss. 2020) (same); *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, 495 F. Supp. 3d

848, 852–53 (C.D. Cal. 2020) (same).  Based on the Policy's Virus Exclusion by itself,

Plaintiffs' claims fail.[4,5]

---

[4] Plaintiffs allege that "a legal proximate cause of the physical loss here was not a virus, but the New York Civil Authority Orders."  (Am. Compl. ¶ 32.)  But, many courts have rejected this very argument and one even called it "nonsense."  *Franklin EWC, Inc. v. Hartford Fin. Servs. Grp., Inc.*, 488 F. Supp. 3d 904, 908 (N.D. Cal. 2020) ("The Covered Cause of Loss, [the plaintiffs] insist, is the Closure Orders that created the 'RISK[] OF DIRECT PHYSICAL LOSS' separate and independent from the virus.  Thus, under [the] [p]laintiffs' theory, the loss is created by the Closure Orders rather than the virus, and therefore the Virus Exclusion does not apply.  Nonsense."); *see also, Natty Greene's*, 503 F. Supp. 3d at 363–64("While the [o]rders technically forced the [p]roperties to close to protect public health, the [o]rders only came about sequentially as a result of the COVID-19 virus spreading rapidly throughout the community."); *Chattanooga Prof'l Baseball LLC v. Nat'l Cas. Co.*, 2020 WL 6699480, at *2–3 (D. Ariz. Nov. 13, 2020) (finding that the virus exclusion applied where "[t]he amended complaint alleges that the government orders . . . were issued as a direct result of [COVID-19]," and thus that the plaintiffs' "attempt to create a question of fact by arguing it is unclear whether their losses were caused by the government's orders in response to the virus or the virus itself" was "unavailing"); *10E, LLC v. Travelers Indem. Co. of Conn.*, 500 F. Supp. 3d 1070, 1073 (C.D. Cal. 2020) ("Because in-person dining restrictions result from [the COVID-19] virus, the virus exclusion bars coverage for their consequences.").  To the extent that Plaintiffs argue that the Orders, not COVID-19 caused their losses, it is inconsistent with the weight of authority and the language of the Virus Exclusion in the Policy.

[5] Plaintiffs also rely on the doctrine of regulatory estoppel in an attempt to avoid the application of the Virus Exclusion.  But to do so would be in contravention of New York law. *See Sher v. Allstate Ins. Co.*, 947 F. Supp. 2d 370, 388–90 (S.D.N.Y. 2013) ("New York's parol evidence rule counsels against adoption of a regulatory estoppel cause of action.  The parol evidence rule bars consideration of extrinsic evidence to contradict an otherwise unambiguous insurance provision."); *see also Emps. Ins. of Wausau v. Duplan Corp.*, No. 94-CV-3143, 1999 WL 777976, at *14 (S.D.N.Y. Sept. 30, 1999) (declining to adopt regulatory estoppel theory under New York law to nullify an exclusionary provision of an insurance policy because regulatory estoppel "has received almost universal disapproval," and "has been consistently rejected by federal and state authorities across the country and has never been adopted by any New York court").  As such, the Court declines to apply the doctrine of regulatory estoppel here.

III.  Conclusion

For the foregoing reasons, the Defendant's Motion is granted.[6]  The Clerk of Court is

respectfully directed to terminate the pending Motion and close the case.  (Dkt. No. 34.)


 SO ORDERED.

Dated:          September 13, 2021
                White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[6] To the extent that Plaintiffs seek to represent a proposed class, those allegations cannot survive where Plaintiffs' individual claims have failed to state a claim, as they have failed to do so here.  (Am. Compl. ¶¶ 43–56); *see e.g.*, *Michael Cetta*, 506 F. Supp. 3d at 185 ("To the extent that [the plaintiff] sought class certification . . . the [c]ourt does not reach this [issue] because the [c]ourt . . . grants the motion to dismiss as to all claims that [the plaintiff] brought.")  Thus, the Court will not consider allegations related to the proposed class.